IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JIMMY HEBERT,** | § | NO. 4:20-cv-00998 |
| | § | |
| **Plaintiff** | § | **JURY DEMANDED** |
| | § | |
| v. | § | |
| | § | |
| **MARATHON OIL COMPANY;** | § | |
| **MARATHON OIL PERMIAN** | § | |
| **LLC; AND PRESSURE** | § | |
| **CONTROL, INC., D/B/A ENERGY** | § | |
| **PERSONNEL INTERNATIONAL** | § | |
| | § | |
| **Defendants** | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff, Jimmy Hebert, respectfully asserts as follows:

**I. INTRODUCTION**

1. From March 7, 2018 through January 10, 2019, Defendants, Marathon Oil Company ("MOC"); Marathon Oil Permian LLC ("MOP"); and Cudd Pressure Control, Inc., d/b/a Energy Personnel International ("EPI")[1], employed Plaintiff, Jimmy Hebert ("Hebert")—an African-American male—as a "Completions

---

[1] In this Complaint, Marathon Oil Company ("MOC"); Marathon Oil Permian LLC ("MOP"); and Cudd Pressure Control, Inc., d/b/a Energy Personnel International ("EPI") are collectively denominated: "Marathon."

Consultant" on Marathon's fracking operations in New Mexico's Permian Basin. Marathon worked Hebert in excess of eighty (80) hours per week as a "Completions Consultant."

In violation of the Fair Labor Standards Act ("FLSA"), Marathon paid Hebert only straight-time wages for his overtime hours (i.e. hours in excess of 40 hours per week). Marathon also violated Hebert's rights under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. section 1981 by, *inter alia*, terminating him because of his race and because he internally opposed its race discrimination. Accordingly, Hebert brings this lawsuit against MOC, MOP, and EPI under the FLSA to recover unpaid overtime compensation and under Title VII and 42 U.S.C. section 1981 for, *inter alia*, race discrimination and retaliation for opposing race discrimination.

## II. JURISDICTION AND VENUE

2. This Court has original jurisdiction under 29 U.S.C. § 216(b); 42 U.S.C. section 2000e-5(f)(3); and 28 U.S.C. §§ 1331(a).

3. Venue is proper in the Southern District of Texas under 28 U.S.C. 1391(b) because MOC, MOP, and EPI reside in this District.

## III. PARTIES

4. Plaintiff, Jimmy Hebert ("Hebert"), is an African-American adult male who resides in Prairieville, Louisiana.

5. Defendant, Marathon Oil Company ("MOC"), is a corporation residing in this District and has appeared in this action.

6. Defendant, Cudd Pressure Control, Inc., d/b/a Energy Personnel International ("EPI"), is a corporation residing in this District and has appeared in this action.

7. Defendant, Marathon Oil Permian LLC ("MOP"), is a limited liability corporation residing in this District and has appeared in this action.

## IV. FACTS

8. MOC is a Fortune 500 oil exploration and production company that, in 2018, employed approximately 2,400 employees and netted profits of approximately $1.1 billion.

9. MOC and its subsidiary, MOP, engage in extensive oil exploration and production operations in New Mexico's Permian Basin.

10. MOC and MOP utilize nominal "independent contractors"—supplied by third party subcontractors—to help perform their oil exploration and production operations in New Mexico's Permian Basin.

11. EPI is one such MOC and MOP subcontractor.

12. On about March 7, 2018, EPI—at MOC and MOP's request and direction—retained Jimmy Hebert as a "Completions Consultant" to work on MOC and MOP's "Permian Basin Field Completions Team," which performed hydraulic fracturing ("fracking") operations on oil and natural gas wells in New Mexico's Permian Basin.

13. From approximately March 7, 2018, until January 10, 2019, Hebert worked as a "Completions Consultant" on MOC and MOP's "Permian Basin Field Completions Team."

14. Hebert's work as a "Completions Consultant" required him to assist MOC and MOP in their fracking operations in the Permian Basin.

15. At all times, MOC, MOP, and EPI had the right to control and, in fact, controlled Hebert's work as a "Completions Consultant" on its "Permian Basin Field Completions Team."

16. For example, MOC and MOP Completions Engineer(s), Completions Superintendent(s), Completions Forem(e)n, and/or other Marathon employee(s) daily supervised Hebert's work as a "Completions Consultant."

17. MOC, MOP, and EPI employees dictated where (i.e. the physical locations), when (i.e. the dates/times), and how Hebert performed his work as a

4

"Completions Consultant."

18. In the course and scope of his employment as a "Completions Consultant," MOC, MOP, and EPI required Hebert to attend MOC and MOP-run training, safety, and recap meetings.

19. MOC, MOP, and EPI had the right to terminate Hebert and, in fact, did terminate his employment as a "Completions Consultant" on Marathon's fracking operations in the New Mexico Permian Basin, on or about January 10, 2019.

20. MOC, MOP, and EPI's relative investment in the work performed by Hebert far exceeded Hebert's: for example, MOC, MOP, and EPI furnished necessary equipment and supplies that Hebert used to perform his "Completions Consultant" work.

21. MOC, MOP, and EPI determined the degree of Hebert's opportunity for profit or loss: for example, by determining his schedule and hours of work.

22. The skill and initiative required of Hebert to perform the "Completions Consultant" work was not high: for example, no advanced education or prior experience as a "Completions Consultant" was required to perform this work.

23. Hebert was economically dependent upon MOC, MOP, and EPI, as evidenced, in part, by the fact that those companies required him to work in excess of twelve hours per day and eighty (80) hours per week, which effectively

precluded him from performing other work.

24. Throughout his employment by Marathon, Hebert—pursuant to MOC, MOP, and EPI's directive—worked two consecutive weeks (i.e. Monday day through Sunday) and then was off for two consecutive weeks.

25. During his on-duty stints, MOC, MOP, and EPI worked Hebert, on average, twelve and one-half (12.5) hours per day and, hence, eighty-seven and one-half (87.50) hours per week.

26. MOC, MOP, and EPI paid Hebert a flat rate of $1,650.00 per day during the period March 7, 2018, through June 30, 2018.

27. MOC, MOP, and EPI paid Hebert a flat rate of $1,700.00 per day in the period July 1, 2018 through January 10, 2019.

28. MOC, MOP, and EPI compensated Hebert for all hours he worked in excess of forty (40) hour per week at a straight-time rate of $1,650.00 per day (for the period March 7, 2018, to June 30, 2018) and $1,700.00 per day (for the period July 1, 2018, through January 10, 2019).

29. MOC, MOP, and EPI failed to pay Hebert *any* overtime compensation, as required by the FLSA, for the hours he worked in excess of forty (40) hour per week during the period March 7, 2018 through January 10, 2019.

30. MOC, MOP, and EPI's failure to pay Hebert overtime compensation in accordance with the FLSA was intentional, willful, and not in good-faith.

31. At all relevant times, MOC was an "employer," as that term is defined under the FLSA.

32. At all relevant times, MOP was an "employer," as that term is defined under the FLSA.

33. At all relevant times, EPI was an "employer," as that term is defined under the FLSA.

34. At all relevant times, Hebert was MOC, MOP, and EPI's "employee"—as that term is defined under the FLSA—whether singly or jointly.

35. At all relevant times, MOC, MOP, and EPI—whether singly or jointly—"employed" Hebert in "commerce" and in the production of "goods" for "commerce," as those terms are defined by the FLSA. *See* 29 U.S.C. section 203.

36. Specifically, at all relevant times, MOC, MOP, and EPI employed Hebert in fracking operations that explored for and produced oil and natural gas in New Mexico for interstate commerce: that is, for transport to and refining in States other than New Mexico. Hebert's work as a "Completions Consultant" was so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce—specifically, oil and natural gas exploration, production, and

refining—as to be, in practical effect, a part of interstate commerce, rather than an isolated local activity. Hebert's "Completions Consultant" work was entwined with the continuous stream of interstate commerce: namely, the exploration, production, transportation, and refining of oil and natural gas. For example, once the oil was extracted through the fracking operations on which Hebert worked, the oil was transported by tanker trucks from New Mexico to downstream refining facilities in other states, where it was refined and then transported interstate for sale and consumption throughout the United States.

37. At all relevant times, MOC was an "enterprise engaged in commerce or in the production of goods for commerce," as those terms are defined by the FLSA. That is, MOC had employees engaged in interstate commerce and/or in the production of goods for interstate commerce and had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for interstate commerce by any person, including oil and natural gas that MOC explored for and produced in one State (e.g. New Mexico) for transport to other State(s) for refining and consumption. In the course and scope of exploring for and producing such oil and natural gas, MOC employees worked on oil and natural gas drilling, storage, and transportation equipment that had been moved in or produced for interstate commerce. MOC employees also engaged in interstate

communications (e.g. between New Mexico and Texas) in the course and scope of performing their fracking operations. At all relevant times, MOC was an enterprise whose annual gross volume of sales made or business done was not less than $500,000, exclusive of excise taxes at the retail level that are separately stated.

38. At all relevant times, MOP was an "enterprise engaged in commerce or in the production of goods for commerce," as those terms are defined by the FLSA. That is, MOP had employees engaged in interstate commerce and/or in the production of goods for interstate commerce and had its employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for interstate commerce, including oil and natural gas that MOP explored for and produced in one State (e.g. New Mexico) for transport to other State(s). In the course and scope of exploring for and producing such oil and natural gas, MOP employees also worked on oil and natural gas drilling, storage, and transportation equipment that had been moved in or produced for interstate commerce. MOP employees also engaged in interstate communications (e.g. communications between New Mexico and Texas) in the course and scope of performing their fracking operations. Additionally, at all relevant times, MOP was an enterprise whose annual gross volume of sales made or business done was not less

9

than $500,000, exclusive of excise taxes at the retail level that are separately stated.

39. At all relevant times, EPI was an "enterprise engaged in commerce or in the production of goods for commerce," as those terms are defined by the FLSA. That is, EPI had employees engaged in interstate commerce and/or in the production of goods for interstate commerce and had its employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for interstate commerce by any person, including oil and natural gas that were produced in one State (e.g. New Mexico) for transport to other State(s). In the course and scope of producing such oil and natural gas, EPI employees worked on oil and natural gas drilling, storage, and transportation equipment that had been moved in or produced for interstate commerce. EPI employees also engaged in interstate communications (e.g. between New Mexico and Texas) in the course and scope of performing their fracking operations. Additionally, at all relevant times, EPI was an enterprise whose annual gross volume of sales made or business done was not less than $500,000, exclusive of excise taxes at the retail level that are separately stated.

40. At all relevant times, MOC, MOP, and EPI—singly and jointly—failed to pay Hebert the overtime compensation to which he was entitled under the

FLSA.

41. Hebert's written consent to this action has been filed. *See* Exhibit A.

42. On or about January 10, 2019, MOC, MOP, and EPI terminated Jimmy Hebert's employment as a "Completions Consultant."

43. Jimmy Hebert was qualified for the position of "Completions Consultant" at the time MOC, MOP, and EPI terminated his employment on/about January 10, 2019.

44. MOC, MOP, and EPI terminated Hebert as a "Completions Consultant" on/about January 10, 2019, because of his race (African-American).

45. MOC, MOP, and EPI's race discrimination against Hebert is evidenced, in part, by the fact that throughout Hebert's employment, Cody Snuggs—a white male who was Hebert's immediate supervisor—demonstrated a racially hostile animus towards Hebert, including referring to Hebert as a "gorilla."

46. Snuggs procured Hebert's termination on January 10, 2019, without any legitimate, non-discriminatory reason and/or through a reason that is unworthy of credence and is otherwise pretextual.

47. Following MOC, MOP, and EPI's termination of Hebert, MOC, MOP, and EPI—with Snuggs' input—replaced Hebert with a Caucasian male.

48. During his employment with MOC, MOP, and EPI, Hebert internally opposed Snuggs' racially discriminatory conduct.

49. Snuggs retaliated against Hebert for his internal opposition to Snuggs' racially discriminatory conduct by procuring Hebert's termination on/about January 10, 2019.

50. MOC, MOP, and EPI's race discrimination and retaliation against Hebert for internally opposing such race discrimination and for filing an EEOC Charge of Discrimination have caused Hebert significant monetary and non-monetary damages, including, but not limited to, lost past and future wages and benefits; damage to his future earning capacity; and damage to his good name and professional reputation.

51. In subjecting Hebert to race discrimination and retaliation for internally opposing such race discrimination and for filing an EEOC Charge of Discrimination, MOC, MOP, and EPI acted knowingly, intentionally, willfully, and with reckless disregard for Hebert's rights under Title VII and 42 U.S.C. section 1981.

52. On or about May 13, 2019, Hebert filed a Charge of Discrimination against MOC, MOP, and EPI with the Equal Employment Opportunity Commission ("EEOC").

53, In retaliation for Hebert's Charge of Discrimination, MOC, MOP, and EPI failed and/or refused to re-employ him.

54. All conditions precedent to the filing of this action—including, but not limited to, Hebert's exhaustion of EEOC administrative remedies—have been performed or have occurred.

Plaintiff, Jimmy Hebert, incorporates by reference herein the allegations contained in paragraphs 1 through 54 *supra*, and further asserts as follows:

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

55. Marathon Oil Company, Marathon Oil Permian LLC, and Cudd Pressure Control, Inc., d/b/a Energy Personnel International ("EPI"), violated Jimmy Hebert's rights under the FLSA by failing to pay Jimmy Hebert the overtime compensation to which he was entitled under the FLSA.

### SECOND CAUSE OF ACTION

56. Marathon Oil Company, Marathon Oil Permian LLC, and Cudd Pressure Control, Inc., d/b/a Energy Personnel International ("EPI"), violated Jimmy Hebert's rights under Title VII of the Civil Rights Act of 1964 by discharging him and otherwise discriminating against him with respect to his compensation, terms, conditions, or privileges of employment, because of his race (African-American).

**THIRD CAUSE OF ACTION**

57. Marathon Oil Company, Marathon Oil Permian LLC, and Cudd Pressure Control, Inc., d/b/a Energy Personnel International ("EPI"), violated Jimmy Hebert's rights under 42 U.S.C. section 1981 by discharging him and otherwise discriminating against him with respect to his compensation, terms, conditions, or privileges of employment, because of his race (African-American).

**FOURTH CAUSE OF ACTION**

58. Marathon Oil Company, Marathon Oil Permian LLC, and Cudd Pressure Control, Inc., d/b/a Energy Personnel International ("EPI"), violated Jimmy Hebert's rights under Title VII of the Civil Rights Act of 1964 by discharging him because he internally opposed race discrimination and by refusing to re-employ him because he filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

**FIFTH CAUSE OF ACTION**

59. Marathon Oil Company, Marathon Oil Permian LLC, and Cudd Pressure Control, Inc., d/b/a Energy Personnel International ("EPI"), violated Jimmy Hebert's rights under 42 U.S.C. section 1981 by discharging him because he internally opposed race discrimination and by refusing to re-employ him because he filed a Charge of Discrimination with the Equal Employment Opportunity

Commission.

## VI. PRAYER FOR RELIEF

Accordingly, Plaintiff, Jimmy Hebert, respectfully moves this Honorable Court—after trial by jury on all issues so triable—for the following relief:

1. Declaratory Judgment that MOC, MOP, and EPI violated his rights under the Fair Labor Standards Act ("FLSA"), Title VII, and 42 U.S.C. section 1981;

2. Injunction preventing MOC, MOP, and EPI from engaging in any further violations of Jimmy Hebert's rights under the FLSA, Title VII, and 42 U.S.C. section 1981 and requiring them to take affirmative steps to ensure that they do not engage in the same or similar violations of his rights or other employees' rights in the future;

3. Unpaid overtime compensation;

4. Actual damages;

5. Exemplary damages;

6. Liquidated damages;

7. Reasonable attorney's fees and costs;

8. Pre-judgment and post-judgment interest; and

9. All other relief, whether at law or in equity, to which he is justly entitled.

Respectfully submitted,


**/s/ Scott Newar**
SCOTT NEWAR
S.D. Texas Bar Number 19191
440 Louisiana, Suite 900
Houston, Texas 77002
Telephone: (713) 226-7950
Fax: (713) 226-7181 (Fax)
E-Mail: newar@newarlaw.com

ATTORNEY-IN-CHARGE
FOR PLAINTIFF, JIMMY HEBERT


**OF COUNSEL**

CHARLES F. HERD, JR.
S.D. Texas Bar Number 2793
Herd Law Firm, PLLC
19500 Tomball Parkway, Suite 250
Houston, Texas 77070
Telephone: 713-955-3699
Fax: 281-462-5180
E-Mail: cfh@herdlawfirm.law

16

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 6, 2020, I served the instant pleading on all Defendants through their respective legal counsel via the Southern District of Texas' CM/ECF system in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Texas.

**/s/ Scott Newar**